UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

                    Plaintiff,

          -v-                                          Case No. 05-CV-2754 (KMK)

NEW YORK PIZZERIA DELICATESSEN, INC.,                  OPINION AND ORDER

                    Defendant.

---

NEW YORK PIZZA DEVELOPMENT, LLC and
NEW YORK PIZZERIA DELICATESSEN, INC.,

                    Counterclaimants,

          -v-

THE CITY OF NEW YORK,

                    Counterclaim-Defendant.

Appearances:

Gerald E. Singleton, Esq.
Corporation Counsel of the City of New York
New York, New York
*Counsel for Plaintiff / Counterclaim-Defendant*

Howard Neal Aronson, Esq.
Robert B. Golden, Esq.
Jeffrey M. Rollings, Esq.
Lackenbach Siegel LLP
Scarsdale, New York
*Counsel for Defendants / Counterclaimants*

KENNETH M. KARAS, District Judge:

Before the Court is Plaintiff's Motion to Dismiss the Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), and to strike the defenses alleged in paragraphs 81, 89, and 93-94[1] of the First Amended Answer, pursuant to Fed. R. Civ. P. 12(f), on grounds of legal insufficiency.[2] Also before the Court is Counterclaimants' request to consider the withdrawal of its tortious interference counterclaim as a withdrawal without prejudice to re-plead after further discovery. (Defs.' and Counterclaimants' Mem. of Law in Opp. to Pl.'s Mot. to Dismiss the Countercl. and Certain Defenses 14-17 ("Defs.' Mem."))   For the reasons stated herein, Plaintiff's Motion to Dismiss is denied, Plaintiff's Motion to Strike defenses is granted in part and denied in part, and Defendants' request to treat the withdrawal of their tortious interference counterclaim as a dismissal without prejudice to re-plead is denied without prejudice.

## I.  Background

### A.  Procedural Background

Plaintiff, The City of New York (the "City"), initiated this action by filing a Complaint on March 10, 2005.  (Doc. No. 1)  Defendant and Counterclaimant, New York Pizzeria

---

[1] Plaintiff also initially challenged the sufficiency, under Fed. R. Civ. P. 12(f), of the defense contained in the original Answer at paragraph 90, asserting misuse of governmental power.  (Pl.'s Mem. of Law in Supp. of Mot. to Dismiss Countercl. and Certain Redundant Defenses Incorporated Therein 1 ("Pl.'s Mem."))  Because that defense was removed from the First Amended Answer, the Court will not address it.  Paragraph 94 of the First Amended Answer, which was not included in the original Answer, but is similar to paragraph 90 of the original answer, is reviewed by the Court for legal insufficiency.  The Court also reviews paragraph 93 of the First Amended Answer because it is addressed by the Parties in their memoranda of law.

[2] The Court's jurisdiction over Plaintiff's underlying Lanham Act claims is pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(b) and 1367.  The Court's jurisdiction over the remaining claims is pursuant to 28 U.S.C. §§ 1338(b) and 1367.

Delicatessen, Inc. ("New York Pizzeria") and Counterclaimant New York Pizza Development,

LLC (collectively "Defendants" or "Counterlcaimants"),[3] answered the Complaint and asserted

counterclaims against the City on April 12, 2005.  (Doc. No. 4)  After Plaintiff timely filed its

Motion to Dismiss Counterclaims and to Strike Certain Defenses, (Doc. No. 8) Defendants

submitted their First Amended Answer with Counterclaims on June 14, 2005.  (Doc. No. 9)

Defendants' First Amended Answer with Counterclaims no longer contained Defendants'

original second and third counterclaims asserting tortious interference and seeking declaratory

judgment based on a claim of Unauthorized Tax due to a Violation of the New York City

Charter.  (Answer ¶¶ 14-33)  Instead, the First Amended Answer asserted a new counterclaim,

alleging breach of contract.  (First Am. Answer ¶¶ 14-21)

       B.  Factual Background

      The City alleges that it is the rightful owner of a number of registered trademarks

associated with the New York City Police Department, including the letters "NYPD" and the

distinctive New York City Police Department shield design.  (Pl.'s Mem. 1)  Defendants, which

operate police-themed pizzerias, challenge the validity of these trademarks and maintain that they

own valid "prior and senior" trademarks that incorporate the letters "NYPD" and a distinctive

shield mark.  (First Am. Counterclaim ¶ 7)  Defendants further challenge the City's marks by

alleging that the City's marks "lack source-indicating significance and are merely ornamental[,]"

_____

    [3] New York Pizzeria is the only Defendant named in the Complaint.  However, for purposes of this Motion, New York Pizzeria and New York Pizza Development, LLC acknowledged in their Response Brief that the distinction between these two parties was not relevant to the issues of this Motion and for ease of comprehension jointly referred to the parties as Defendants.  (*See* Defs.' Mem. 1 n.1)  Likewise, for purposes of this Motion, the Court also collectively refers to New York Pizzeria and New York Pizza Development, LLC as Defendants.

and that the City "has acquiesced in the proliferation of trademarks identical or confusingly similar to" the implicated marks.  (*Id.* ¶¶ 9, 11)

The current action stems from a prior proceeding between the Parties.  On August 7, 2002, after learning of Defendants' shield mark, the City filed a petition with the United States Patent and Trademark Office ("USPTO") seeking cancellation of Defendants' shield mark. (Compl. ¶ 36)  That cancellation request led to the City and Defendant New York Pizzeria entering into a written settlement agreement on May 6, 2003 ("Settlement Agreement").  (*Id.* ¶ 37)  Paragraph 3 of the Settlement Agreement provides:

> In order to avoid confusion between their respective marks, NY Pizzeria will not use its mark in such a manner as to suggest that it is in any way sponsored by or connected to the City or the NYPD. NY Pizzeria shall use its mark only as depicted in Exhibit B hereto, and shall not sell or offer for sale consumer goods such as t-shirt[s], sweatshirts and/or hats to which its marks are affixed in any manner other than face-to-face sales to customers in its restaurant locations.  To the extent that the mark incorporates "NYPD[,]" such letters shall be used only in connection with and in close proximity to the NY Pizzeria design logos in full as depicted in Exhibit B.  NY Pizzeria shall not seek registration of any mark that contains a shield insignia or NYPD, other than as depicted in Exhibit B without the prior written consent of the City. Any applications or registrations for the mark depicted in Exhibit B shall be for restaurant services only.

(*Id.* Ex. A ¶ 3)  Paragraph 5 of the Settlement Agreement, the "no-contest" provision, states:

> NY Pizzeria shall not oppose the City and NYPD's use or registration of its marks for goods other than restaurant services and shall not contest or object to such use or registration.  NY Pizzeria shall provide any documentation necessary to enable the City and NYPD to obtain registration of its insignia in any class with the exception of the class which includes restaurant services, including but not limited to, consents to such registration, if necessary.

4

(*Id.* ¶ 5)  Plaintiff alleges, and Defendants acknowledge, that pursuant to the Settlement Agreement, Defendant New York Pizzeria and the City entered into a stipulation ("Stipulation"), under which New York Pizzeria agreed to delete its shield mark clothing registration from its trademark application, and the City agreed to withdraw its cancellation petition of New York Pizzeria's marks, "without prejudice."  (*Id.* ¶ 39; First Am. Answer ¶ 39)

The Complaint alleges that Defendant New York Pizzeria is presently using New York Pizzeria's trademarks in a manner that violates the terms of the Settlement Agreement.  (Compl. ¶¶ 40-48)  Plaintiff seeks injunctive relief, monetary damages, attorneys' fees, and an order directing the cancellation of federal trademark registrations issued to Defendant New York Pizzeria Delicatessen, Inc.  (*Id.* ¶ 1)  In response, Defendants assert two Counterclaims. Defendants' First Counterclaim seeks an order canceling the City's trademark registrations for the NYPD acronym and the NYPD Shield Design.  (First Am. Counterclaim ¶ 13)  Defendants' Second Counterclaim alleges that by "bringing and maintaining its Complaint," the City "has materially breached the implied covenant contained in the [Settlement] Agreement, and thereby breached the [Settlement] Agreement."  (*Id.* ¶ 17)  The City has moved to dismiss Defendants' two Counterclaims.  The City also has moved to strike Defendants' affirmative defenses that:  (1) the City has been aware of third party use of its alleged marks and has failed to take action to police such marks; (First Am. Answer ¶ 81) (2) the City's alleged "NYPD marks lack source-indicating significance and are merely ornamental, and thus cannot and do not function as trademarks;" (*Id.* ¶ 89) (3) the Settlement Agreement was void for lack of consideration; (*Id.* ¶ 93) and (4) Plaintiff's "entire trademark agreement and licensing scheme, does not comply with the New York City Charter" (*Id.* ¶ 94).

5

## II.  Discussion

### A.  Standard of Review

In reviewing a motion to dismiss, the Court must accept the material facts alleged in a defendant's answer and counterclaims as true, and construe all reasonable inferences in a defendant's favor.  *See Masefield AG v. Colonial Oil Indus.*, No. 05 Civ. 2231, 2006 WL 346178, at * 3 (S.D.N.Y. Feb. 15, 2006) (citing, *inter alia*, *Twinlab Corp. v. Signature Media Servs.*, No. 99 Civ. 169, 1999 WL 1115237, at *1 (S.D.N.Y. Dec. 7, 1999)); *Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Ins. Co.*, 196 F. Supp. 2d 378, 382 (S.D.N.Y. 2002) (noting courts should "'take as true all of the allegations contained in [counterplaintiff's counterclaim] and draw all inferences in favor of [counter]plaintiff.'" (alterations in original) (quoting *Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir. 2001))).  Thus, "'[t]he issue is not whether a [counter-]plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)).  The Court's task when ruling on a 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *Id.* (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  While the Court must accept as true the factual allegations contained in the First Amended Counterclaims and Answer, and must draw all reasonable inferences in the non-movant's favor, "'conclusory allegations unsupported by factual assertions . . . fail[] even the liberal standard of Rule 12(b)(6).'"  *Dow Jones Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307-08

(2d Cir. 2006) (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

On a motion to dismiss a counterclaim, the Court should "'include in [its] analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference.'" *Universal Acupuncture Pain Servs.*, 196 F. Supp. 2d at 382 (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (noting that in evaluating a motion to dismiss, a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (citation omitted).

"The standard that applies to a motion to strike is the 'mirror image' of the standard on a 12(b)(6) motion to dismiss for failure to state a claim." *Cohen v. Elephant Wireless, Inc.*, No. 03 Civ. 4058, 2004 WL 1872421, at *2 (S.D.N.Y. Aug. 19, 2004) (citation omitted).  Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike affirmative defenses under Rule 12(f) for legal insufficiency are generally disfavored and if there are questions of fact or disputed questions of law, the motion should be denied.  *See Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986); *see also Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271-72 (S.D.N.Y. 1999).  To prevail on a motion to strike an affirmative defense, a plaintiff must establish three criteria: "First, there must be no question of fact that might allow the defense to succeed.  Second, there must be no substantial question of law that might allow the defense to succeed.  Third, the plaintiff must be prejudiced by the inclusion of

the defense." *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, No. 04 Civ.

4099, 2005 WL 1164073, at *3 (S.D.N.Y. May 18, 2005).  "Increased time and expense of trial

may constitute sufficient prejudice to warrant granting plaintiff's Rule 12(f) motion."  *Estee*

*Lauder*, 189 F.R.D. at 272.  However, "'even when the facts are not disputed, . . . a motion to

strike for insufficiency was never intended to furnish an opportunity for the determination of

disputed and substantial questions of law, . . . particularly when there has been no significant

discovery.'"  *Id.* (quoting *Salcer*, 744 F.2d at 939).

> B.  Counterclaims

> 1.  Trademark Cancellation Counterclaim

Count One of the First Amended Counterclaim alleges that the City's "NYPD Shield

mark and NYPD Letters mark, . . . lack source-indicating significance and are merely

ornamental."  (First Am. Countercl. ¶ 9)  The Counterclaim further alleges that the City "has

failed to police its marks and/or take action to prevent the proliferation and use of such marks,"

and has "acquiesced in the proliferation and use of trademarks identical or confusingly similar to

its" marks.  (*Id.* ¶¶ 10-11)  Finally, the Counterclaim also alleges that the City is using these

marks "as a means to collect illegal and unlawful taxes in the form of trademark license fees

from third parties . . . in violation of the New York City Charter."  (*Id.* ¶ 12)  Based on these

allegations the Counterclaimants seek an order canceling the City's "NYPD Shield" and "NYPD

Letters" marks.[4]  (*Id.* ¶ 13)

---

[4] At the time this Counterclaim was filed, no relevant trademark registrations had matured.  Yet, at oral argument on the Motion, the parties acknowledged (for the first time) that on November 15, 2005 (Reg. No. 3,014,363) and February 28, 2006 (Reg. No. 3,061,459), the "NYPD Shield" and "NYPD Letters" marks were registered with the USPTO.  Thus, this claim is now properly before the Court.

The City contends that the First Counterclaim, seeking cancellation of these City trademarks, is barred as a matter of law by the terms of the Settlement Agreement.  The City argues that the "no-contest" provision of the Settlement Agreement contractually estopped Defendants from challenging the City's trademarks.  However, Counterclaimants argue they are not bound by the Settlement Agreement because it fails for lack of consideration.  Thus, Counterclaimants conclude that the "no-contest" provision has no bearing on their ability to seek cancellation of the City's trademarks.  Specifically, Counterclaimants argue that under the City's interpretation of the Settlement Agreement, the City could at any time reinstate its cancellation petition against Counterclaimants' trademarks.  If that interpretation is true, Counterclaimants argue, they received nothing in return for agreeing to delete one of their trademark registrations.  At oral argument on this motion the City agreed that its withdrawal of its petition to cancel Counterclaimants' trademarks was the consideration for the Settlement Agreement.  (Tr. 14, Aug. 17, 2006)  The City also maintained that its withdrawal of its cancellation petition "without prejudice" meant that it could reinstate its petition at any later point if New York Pizzeria did not comply with the terms of the Settlement Agreement.  (Tr. 21, Aug. 17, 2006)

To resolve this dispute, the Court is guided by certain legal principles under New York Law that apply to the interpretation of contracts, to wit:  (1) "the intent of the parties governs; (2) a contract should be construed so as to give full meaning and effect to all of its provisions; (3) words and phrases in a contract should be given their plain meaning; and (4) ambiguous language should be construed against the interest of the drafting party."[5]  *Shaw Group Inc. v. Triplefine*

---

[5] The Settlement Agreement specifically provided that New York Law applies, (Compl. Ex. A ¶ 7) and the parties have not argued otherwise.  Accordingly, the Court sees no reason not to apply New York law.  *See Collins v. Harrison-Bode*, 303 F.3d 429, 433 n.1 (2d Cir. 2002).

*Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation and quotation omitted).  Ambiguity in the terms of a contract exists where a "term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004) (citation omitted); *see also Collins*, 303 F.3d at 433 ("Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." (citations and quotations omitted)).  However, a contract is not made ambiguous "simply because the parties urge different interpretations."  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).  Ultimately, whether a contract term is ambiguous "is a question of law to be resolved by the courts."  *Eternity Global Master Fund Ltd.*, 375 F.3d at 178 (citation omitted).

      Here, it is undisputed that the Settlement Agreement was freely entered into by the City and New York Pizzeria.  The Settlement Agreement contained a merger clause stating that "[i]t contains the entire understanding between the parties with respect to its subject matter and may be amended or modified only by a writing executed by both parties."  (Compl. Ex. A ¶ 9)  Counterclaimants have acknowledged in the First Amended Answer that approximately one month after the Settlement Agreement was signed, the City and New York Pizzeria entered into a Stipulation, pursuant to the Settlement Agreement, under which New York Pizzeria agreed to

---

(applying New York law where the parties did not dispute the contract at issue specified that New York law applied).

modify its "Shield" registration and its "N.Y.P.D." trademark application in return for the City agreeing to withdraw its cancellation petition of New York Pizzeria's trademarks "without prejudice."  (Compl. ¶ 39; First Am. Answer ¶ 39)

Interpreting the facts alleged in the light most favorable to Counterclaimants, it is reasonable to infer that the terms of the Settlement Agreement were properly amended or modified by the Stipulation entered into by the City and New York Pizzeria.  Thus, because the City and New York Pizzeria have agreed that the Stipulation was entered into pursuant to the Settlement Agreement and that both documents were executed at substantially the same time and cover the same subject matter, they should be read together for purposes of this motion.  *See Dillon v. Dean*, 653 N.Y.S.2d 639, 640 (App.Div. 1997) (finding release executed at "substantially the same time as a stipulation of settlement covering the same subject matter . . , must be read together" (citing *Nau v. Vulcan Rail & Constr. Co.*, 36 N.E.2d 106, 110 (N.Y. 1941))); *see also This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) ("Under New York law, all writings forming part of a single transaction are to be read together." (citation omitted)); *Transp. Ins. Co. v. Star Indus., Inc.*, No. 01 Civ. 1341, 2005 WL 1801671, at *5 (E.D.N.Y. July 28, 2005) (holding summary judgment inappropriate when considering whether separate written agreements executed at the same time should be read as one agreement since intent of parties is a question of fact); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 360 (S.D.N.Y. 2003) (holding two agreements executed on the same date, between the same parties, addressing the same subject matter, and attached to each other should be read and interpreted together).

To form an enforceable contract under New York Law "there must be an offer,

acceptance, and consideration, as well as a showing of a meeting of the minds, demonstrating the parties mutual assent and mutual intent to be bound." *Sel-Lab Marketing, Inc. v. Dial Corp.*, No. 01 Civ. 9250, 2002 WL 1974056, at *4 (S.D.N.Y. Aug. 27, 2002) (quotations and citations omitted).  Consideration, in the form of a promise or performance "'can be either a bargained for gain or advantage to the promisee or a bargained for legal detriment to the promisor.'" *Id.* (quoting *Roth v. Isomed, Inc.*, 746 F. Supp. 316, 319 (S.D.N.Y. 1990)); *see also Anonymous v. Anonymous*, 784 N.Y.S.2d 918, 2004 WL 396492, at *6 (Sup. Ct. 2004) (Table) ("Mutual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another in a bilateral contract." (citations omitted)).  Consideration need not be recited in the contract itself, but may be implied or proved by parol evidence. *See Anonymous*, 2004 WL 396492, at *6.

Drawing all reasonable inferences in favor of Counterclaimants, their pleading, at this stage, sets forth sufficient facts to allege the Settlement Agreement was not an enforceable contract for lack of consideration.  The City's argument that consideration consisted of its withdrawal of its cancellation petition of Counterclaimants' trademarks "without prejudice" (Compl. ¶ 39) fails because, in the context of this agreement, this term is susceptible to more than one meaning, among which includes the ability of the City to resubmit its cancellation petition whenever it so desired.  The City suggested, for the first time at oral argument, that it could only reinstate its cancellation petition if Defendants did not comply with the Settlement Agreement.  (Tr. 21, Aug. 17, 2006)  The City's interpretation of the term "without prejudice" while reasonable, does not as a matter of law preclude Defendants' interpretation that the City

12

could reinstate its cancellation petition against them at any moment without any precipitating action by Defendants.  At this stage, under this reasonable interpretation, there is room for dispute over whether there was mutual consideration for the Settlement Agreement.  Without consideration, there is no enforceable Settlement Agreement to restrict Counterclaimants from contesting the City's trademarks.  *See Sel-Lab*, 2002 WL 1974056, at *5 ("In the absence of consideration, there is no enforceable contract, and therefore, no breach.") (citation omitted). Accordingly, the City's Motion to Dismiss Counterclaimants' First Counterclaim, seeking the cancellation of the City's "NYPD Shield" and NYPD Letters" marks, based solely on enforcing the terms of the Settlement Agreement, is denied.

### 2.  Breach of Contract Counterclaim

Count Two of the First Amended Counterclaim alleges, in the alternative, a breach of the Settlement Agreement contending that the City, "breached the implied covenant contained" in the Settlement Agreement by "bringing and maintaining its Complaint against Counterclaimant" for trademark violations and "by otherwise interfering with Counterclaimants['] business operations . . . ."[6]  (First Am. Countercl. ¶ 17)

---

[6] The Counterclaim, by its terms, grounds its breach of contract claim in a "breach of the implied covenant contained in the [Settlement] Agreement."  (First Am. Countercl. ¶ 17)  Yet, Counterclaimants maintain the breach of contract claim "is not based on the implied covenant of good faith and fair dealings," but rather, is somehow "based on paragraphs 3 and 4 of the [Settlement] [A]greement."  (Robert B. Golden Letter to the Court, June 20, 2005)  This is a distinction without a difference because a breach of the implied covenant of the duty of good faith and fair dealing "is merely a breach of the underlying contract," *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citations and quotations omitted), and "can only impose an obligation consistent with other mutually agreed upon terms in the contract." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (citations and quotations omitted).  Thus, the Court reviews whether the breach of contract counterclaim properly pleads the City's breach of the terms of the Settlement Agreement.

Pleading in the alternative, Counterclaimants argue the Settlement Agreement is an enforceable contract, a fact the City does not dispute.  Counterclaimants allege the City breached the third and fourth paragraphs of the Settlement Agreement by virtue of its decision to file the Complaint against Defendant New York Pizzeria to enforce the terms of the Settlement Agreement.  (*Id.* ¶¶ 16-17)  Counterclaimants contend that the third and fourth paragraphs of the Settlement Agreement barred the City from seeking cancellation of Counerclaimants' "Shield" or "Pie Slice" marks or otherwise interfere with Counterclaimants' use of the marks or their respective registrations.  Therefore, Counterclaimants argue, the filing of the Complaint, which includes a prayer for relief directing the USPTO to cancel New York Pizzeria's trademark registrations of its Shield and N.Y.P.D. marks, constitutes a breach of the Settlement Agreement.

The City maintains that the filing of the Complaint, including its request for an order directing the cancellation of New York Pizzeria's trademark registrations, as an alternative pleading, merely sought to enforce the City's legal and contractual rights under the Settlement Agreement and therefore is not a breach of the Settlement Agreement.  (Gerald E. Singleton Letter to the Court, June 16, 2005)  The City also argues that although New York Pizzeria breached the Settlement Agreement, the City has fully performed its obligations under the Settlement Agreement, seeks to enforce the Settlement Agreement, and has not made an election to terminate the Settlement Agreement.  (Pl.'s Reply Mem. of Law in Further Supp. of Mot. to Dismiss Countercl. and Certain Redundant Defenses Incorporated Therein 7 ("Pl.'s Reply"))

Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and can elect to terminate the contract and sue for damages.  *See NAS Elecs.,Inc. v. Transtech*

14

*Elecs. PTE, Ltd.*, 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003) (citations omitted).  Alternatively, if the non-breaching party chooses not to terminate the contract, and thus to continue the performance under the contract despite the breach, its remedy is to sue for partial damages.  *Id.* (citation omitted); *see also Estate of John Lennon v. Leggoons, Inc.*, No. 95 Civ. 8872, No. 96 Civ. 0020, 1997 WL 346733, at *1 (S.D.N.Y. June 23, 1997) ("It is well settled that the non-breaching party has a choice when faced with a breach by the other party:  it can stop performance and sue for total breach or affirm the contract by continuing to perform while suing in partial breach." (citations omitted)).  When the non-breaching party elects to continue the contract, "it is not freed from its obligations under the contract, despite the [other] party's breach."  *Global Switching, Inc. v. Kasper*, No. 06 Civ. 0412, 2006 WL 385315, at *5 n.4 (E.D.N.Y. Feb. 17, 2006) (citation omitted); *see also ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991) (holding non-breaching party's refusal "to perform its end of the bargain" after electing to affirm the contract impermissible); *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 397-98 (S.D.N.Y. 1999) (a party electing to continue performance while suing for partial breach is still bound by its contractual promises; there is "no third option allowing the party claiming a breach to invoke 'self-help' and only perform those obligations it wishes to perform." (citations and quotations omitted)).

Confronted with what the City considered a material breach of the Settlement Agreement by New York Pizzeria, the City did not choose either of the options available to it under New York law.  Rather, as noted above, the City elected to continue operating under the Settlement Agreement while initiating an action that, at least in part, appears to potentially run counter to the City's obligations under the Settlement Agreement and the related Stipulation.  Under the

15

Settlement Agreement and Stipulation that the City seeks to enforce, Counterclaimants argue, the

City was obligated to withdraw its cancellation petition against New York Pizzeria's trademarks.

By seeking cancellation of New York Pizzeria's trademarks, in direct contravention of the City's

obligations under the agreement it is seeking to enforce, the City appears to be avoiding the

obligations it was bound to keep under the Settlement Agreement and Stipulation.  The City

counters that under the election of remedies doctrine it did not have to choose, at the pleading

stage, which remedy – termination at the time of breach or affirmation of contract despite breach

and sue for damages – it sought to enforce.  (Gerald E. Singleton Letter to the Court, Aug. 16,

2006)  The City is ignoring, however, that this case is different from the typical election of

remedies in that Counterclaimants contend that by the filing of the Complaint itself, the City has

breached the terms of the Settlement Agreement.  Nevertheless, the City argues, it should be

allowed to plead in the alternative and elect which remedy it wishes to pursue at a later stage.

Yet, the City argues, Counterclaimants should not likewise be allowed to counterclaim in the

alternative.  Obviously, if the City is allowed to plead in the alternative, then Counterclaimants

should also be allowed to counterclaim and defend against these claims in the alternative at the

pleading stage.[7]  Accordingly, interpreting the facts alleged in the light most favorable to

Counterclaimants, the Counterclaimants are within their contractual rights to plead in the

alternative and demand the City's performance under the Settlement Agreement and Stipulation

---

[7] At this stage, with little to no factual record, the Court is not in a position to determine whether the City, by its actions or tacit acceptance of Defendants' performance under the contract, waived its right to sue for termination.  *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 736-37  (S.D.N.Y. 2000) (explaining that a "non-breaching party who chooses to continue to perform the contract can never thereafter renounce its election to continue and seek to *terminate* the contract based on the prior breach" (citations omitted)).  The Court notes that this issue may prove relevant at a later stage.

and sue for breach of contract.  Thus, the City's Motion to Dismiss the Breach of Contract counterclaim is denied.

### C.  Motion to Strike

The City also moves to strike the defenses alleged in paragraphs 81, 89, and 93-94 of the First Amended Answer on the grounds of legal insufficiency.[8]  Paragraph 93 asserts the Settlement Agreement is void for lack of consideration on Plaintiff's behalf.  (First Am. Answer ¶ 93)  The defenses raised by New York Pizzeria in paragraphs 81 and 89 challenge the validity of the City's trademarks and therefore the City's ability to maintain this action.  (*Id.* ¶¶ 81, 89)  Paragraph 94 contends that the Settlement Agreement is void "on the grounds that Plaintiff's entire trademark agreement and licensing scheme, does not comply with the New York City Charter . . . ."  (*Id.* ¶ 94)  In response, the City first argues that Defendants received consideration under the Settlement Agreement, namely the City agreed not to challenge Defendants' marks.  Second, the City contends that Defendants cannot challenge the validity of Plaintiff's trademarks because, under a theory of "contractual estoppel," the "no-contest" provision of the Settlement Agreement bars any challenge to Plaintiff's trademarks.  Third, the City argues that Defendants' challenge to the Settlement Agreement suggesting that the City's trademark agreement and licencing scheme violates the New York City Charter is both frivolous and time-barred.

### 1.  Validity of Settlement Agreement

Defendants' first affirmative defense asserts in the alternative, that they are not bound by the Settlement Agreement's "no contest" provision because the contract is void for lack of

---

[8] As noted *supra*, paragraphs 93 and 94 of the First Amended Complaint are not specifically challenged by the City, but the Court will review them under the Motion to Strike because they are both addressed in the Parties' papers.

consideration.  As noted *supra*, in Part II.B.1, Defendants maintain that the Settlement

Agreement and Stipulation are one-sided in that they only make demands on Defendants without

anything in return from Plaintiff.  For the reasons stated *supra*, in Part II.B.1, and drawing all

reasonable inferences in Defendants' favor, there is a question of fact regarding the adequacy of

consideration offered to support the Settlement Agreement.  Accordingly, Plaintiff's Motion to

Strike Defendants' affirmative defense challenging the Settlement Agreement for lack of

consideration (*Id.* ¶ 93) is denied.

>             2.  No-Contest Provision

Defendants' second affirmative defense challenges the validity of the City's trademarks.

This affirmative defense is similar to the First Counterclaim seeking cancellation of the City's

trademarks.  The City argues the "no-contest" provision of the Settlement Agreement and

Stipulation contractually estopped Defendants from challenging Plaintiff's trademarks and thus

seeks to strike this affirmative defense as legally insufficient.  As noted *supra*, in Part II.B.1,

there is a question of fact as to whether there was sufficient consideration to support the

Settlement Agreement and Stipulation.  Since the contract containing the "no-contest" provision

may ultimately fail as a matter of law for lack of consideration, the question of whether the "no-

contest" provision contained in the Settlement Agreement and Stipulation bars Defendants from

challenging the City's trademarks is premature at this stage.  Accordingly, the City's Motion to

Strike Defendants' affirmative defense challenging the use or registration of Plaintiff's marks

(First Am. Answer ¶¶ 81, 89) is denied.

>             3.  New York City Charter

The City next challenges Defendants third affirmative defense that asserts "upon

information and belief, the settlement agreement between the parties is void *ab initio* on the grounds that Plaintiff's entire trademark agreement and licensing scheme, does not comply with the New York City Charter . . . ."  (First Am. Answer ¶ 94)  Plaintiff argues that this defense is frivolous and time-barred under N.Y. C.P.L.R. 217.

Plaintiff maintains, and Defendants do not dispute, that under this affirmative defense, Defendants essentially attempt, pursuant to CPLR article 78, to challenge all of the City's allegedly invalid trademark agreements and licenses.  A "presumption of regularity and honest motivation . . . attaches to official acts," such as those being challenged here.  *Altamore v. Barrios-Paoli*, 683 N.E.2d 740, 744 (N.Y. 1997).  In this case, Defendants make no allegation as to how the trademarks in this case were procured in violation of the New York City Charter. Rather, Defendants only generally allege "upon information and belief," that the City's entire trademarks and license "scheme" violated the New York City Charter.  Defendants' mere suspicions that something was improperly done in connection with the City's trademarks, without stating the source of such information or factual grounds for such belief, is insufficient to maintain such an action as a matter of law.  *See Dow Jones Co.*, 451 F.3d at 307-08 (2d Cir. 2006) ("'conclusory allegations unsupported by factual assertions . . . fail[] even the liberal standard of Rule 12(b)(6).'" (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996))); *see also Bryant v. Bd. of Educ.*, 800 N.Y.S.2d 778, 782 n.3 (App.Div. 2005) (reversing article 78 determination after finding the record inadequate where "virtually every paragraph of the petition is alleged 'upon information and belief'").  Accordingly, Plaintiff's Motion to Strike Defendants' affirmative defense challenging the City's trademark and licensing "scheme" (First Am. Answer ¶ 94) is granted.

      D.  Request to Consider Withdrawal of Tortious Interference Counterclaim
      without Prejudice

      Count Three of Defendants' original Counterclaims asserted a claim for tortious interference.  Defendants' withdrew this claim in their First Amended Answer with Counterclaims.  Defendants now request that this withdrawal should be considered a dismissal without prejudice to re-plead.  (Defs.' Mem. 14)  In response, the City argues Defendants should not be granted leave to re-plead this claim.  (Pl.'s Reply 9)

      Where, as here, a responsive pleading has been filed, Rule 15(a) allows a party to amend its pleading "only by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a).  To date, Defendants have not sought leave of the Court to amend its counterclaims to add a tortious interference claim.  Thus, Plaintiff's request to deny Defendants leave to re-plead their tortious interference claim is premature.  In the event Defendants seek leave to amend their pleadings they are reminded to comply with both the Federal Rules of Civil Procedure and the Court's Individual Practices governing requests to file a motion.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Dismiss the Counterclaims is denied.

Plaintiff's Motion to Strike the defenses asserted in paragraphs 81, 89, and 93 of the First

Amended Answer is denied.  Plaintiff's Motion to Strike the defense asserted in paragraph 94 of

the First Amended Answer is granted.  Defendants' request to treat the withdrawal of their

tortious interference counterclaim as a dismissal without prejudice to re-plead is denied as not

ripe, and, therefore, without prejudice.


SO ORDERED.

Dated:          September 29, 2006
                New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21

Service List:

Gerald E. Singleton, Esq.
Corporation Counsel of the City of New York
The City of New York Law Department
100 Church Street
New York, New York 10007
Fax: (212) 788-1633
*Counsel for Plaintiff / Counterclaim-Defendant*

Howard Neal Aronson, Esq.
Robert B. Golden, Esq.
Jeffrey M. Rollings, Esq.
Lackenbach Siegel LLP
Lackenbach Siegel Building, One Chase Road
Scarsdale, New York 10583
Fax: (914) 723-4301
*Counsel for Defendants / Counterclaimants*